IN THE COURT OF COMMON PLEAS
FRANKLIN COUNTY, OHIO
GENERAL DIVISION

Pamela Lee (Pro Se)
9506 Shawnee Trail
Powell, Ohio 43065

Mark Lee (Pro Se)
2755 Apt. E58 Lexington Avenue
Lexington, Ohio 44904

Plaintiffs,

v.

Thrivent Financial for Lutherans
4321 North Ballard Road
Appleton, WI 54919

Defendant.

Case No.: _____
Judge: _____

## COMPLAINT

## PRELIMINARY STATEMENT

1. Plaintiffs state the following allegations in numbered paragraphs. Where facts derive

from Defendant's records, regulatory correspondence, or matters not within Plaintiffs'

possession, Plaintiffs plead those facts on information and belief.

## I. INTRODUCTION / NATURE OF THE CASE

2. This is an action for breach of contract, insurance bad faith, spoliation of evidence, statutory

and regulatory violations, and related equitable relief arising from Defendant Thrivent Financial

for Lutherans' refusal to pay life-insurance benefits under Horizon

Life Insurance Certificate No. 6680546 (the "Certificate"), issued in 1986 on the life of

John A. Lee (the "Insured"). Plaintiffs are the Insured's surviving beneficiaries.

1

OH694 - Q6 Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 Feb 05 2:02 PM-26CV00130

3. Defendant has provided shifting and contradictory explanations regarding the Certificate's status, failed to issue a timely and adequate written claim determination, and acknowledged that key policy-administration and termination records are unavailable. Defendant's own internal administrative information reflects continued policy activity years after the alleged lapse date.

## II. JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction pursuant to Article IV, Section 4(B) of the Ohio Constitution and R.C. 2305.01.

5. Venue is proper in Franklin County, Ohio because the Insured resided in Franklin County at relevant times, the claim and beneficiary interests arose from events affecting Ohio residents, and Defendant regularly transacts insurance business in Franklin County and throughout Ohio.

6. The amount in controversy exceeds $25,000, exclusive of interest and costs, and includes compensatory damages, consequential damages, and punitive damages where permitted by law.

## CONDITIONS PRECEDENT

7. Plaintiffs have satisfied all conditions precedent to coverage and payment under the Certificate, or such conditions have been waived or excused by Defendant's conduct, delay, and failure to provide required policy and claim communications.

## III. PARTIES

8. Plaintiff Pamela Lee is a resident of Delaware County, Ohio and a named beneficiary under the Certificate.

9. Plaintiff Mark Lee is a resident of Richland County, Ohio and a named beneficiary under the Certificate.

10. The Insured, John A. Lee, was an Ohio resident and died on or about September 1, 2022.

11. The Insured's spouse, Marilyn Lee, was an Ohio resident and died on or about September 19, 2023.

12. Upon Marilyn Lee's death, Plaintiffs became the sole surviving beneficiaries and their rights to payment vested upon the Insured's death.

13. Defendant Thrivent Financial for Lutherans is authorized to transact insurance in Ohio, regularly does business in Ohio, and is the successor to Aid Association for Lutherans, the original issuer/administrator of the Certificate.

## IV. FACTUAL ALLEGATIONS

14. In or about 1986, Defendant's predecessor issued the Certificate insuring the life of John A. Lee.

15. The Certificate provided for premium payments, accumulation of cash value, policy loans, and payment of a death benefit to the beneficiaries upon the Insured's death, subject to the terms of the contract and applicable Ohio law.

16. Defendant and/or its predecessor generated, maintained, and controlled policy administration records relating to the Certificate, including premium history, loan activity, notices, and any termination documentation.

17. The Insured paid premiums and maintained the Certificate as required to keep it in force, and Defendant has not produced admissible evidence of any lawful surrender, cancellation, payout, or termination initiated by the Insured.

18. Defendant has asserted that the Certificate lapsed or terminated, yet has not produced the underlying records, calculations, notices, or contemporaneous documentation ordinarily maintained in the regular course of insurance administration.

19. Defendant's internal administrative information reflects the Certificate was originally issued with a specified amount of $80,000 and later reduced to $50,000 while the quarterly premium remained $293.19.

3

Case: 2:26-cv-00892-JLG-CMV Doc #: 4 Filed: 03/13/26 Page: 54 of 11 PAGEID #: 43
Franklin County Ohio Clerk of Courts of the Common Pleas - 2026 Feb 05 4:21 PM-26CV001130

20. Defendant's internal information further reflects multiple policy loans over time, including activity in 1987, 1991, and 1997.

21. In correspondence dated June 5, 2025, Defendant acknowledged that records are limited due to retention practices and that it is relying primarily on internal system data rather than a complete policy file.

22. In written correspondence dated June 12, 2025, Kay Hermus, identified as Senior Compliance/Regulatory Analyst, Client Relations, General Counsel's Office for Defendant, stated on Defendant's letterhead that "the contract lapsed on December 12, 1999, over 25 years ago, due to the loan balance exceeding the cash value."

23. In the same June 12, 2025 correspondence, Ms. Hermus further represented that Defendant had "no further documents to share" regarding the policy and that "[i]f this information was available, we would comply with your request."

24. Ms. Hermus additionally stated that, "Due to this contract being inactive for a period longer than our record retention requirements, we no longer have any further detailed information to share."

25. In separate written correspondence dated June 5, 2025, issued on Defendant's letterhead in response to a complaint submitted to the Better Business Bureau of Wisconsin, Ms. Hermus, acting in the same representative capacity, acknowledged that although "the documents on file are limited," information contained within Defendant's own administrative systems indicates that the contract "was issued on September 12, 1986."

26. Defendant's written statements, made through its Senior Compliance and Regulatory representative, constitute admissions that (a) the policy existed, (b) Defendant maintains

4

administrative system data regarding the policy, and (c) Defendant failed to preserve or produce material policy records necessary to substantiate Defendant's asserted lapse determination.

27. Defendant asserts the Certificate lapsed in December 1999 due to a loan balance allegedly exceeding cash value, but Defendant has not produced the underlying calculations, premium history, notice records, or contemporaneous termination documentation necessary to substantiate that claim.

28. Defendant's own internal administrative data reflects continued loan balance activity years after the alleged 1999 lapse, including balances recorded in 2010 and 2014, despite Defendant's position that the policy ceased to exist in 1999.

29. The Insured died on or about September 1, 2022.

30. Defendant acknowledged that key records necessary to prove a lawful lapse are unavailable. The absence of these required records prevents Plaintiffs from independently verifying Defendant's asserted lapse and materially impairs Plaintiffs' ability to present a complete evidentiary case.

31. Plaintiffs located the Certificate in May 2025 and promptly contacted Defendant to initiate a claim and obtain the policy and claim file.

32. During late May and June 2025, Defendant's representatives provided contradictory and inconsistent statements regarding whether the Certificate was active, paid, lapsed, or inaccessible.

33. Plaintiffs submitted claim documentation, including death certificates and beneficiary information, and repeatedly requested a complete written claim determination and production of the policy and claim file.

5

0H694 - Q10

34. Defendant did not provide a written claim determination identifying the factual or contractual basis for nonpayment.

35. Defendant acknowledged that key records ordinarily necessary to prove a lawful lapse—including lapse notices, proof of mailing, and termination documentation—are unavailable due to its record-retention practices.

36. By June 2025, Plaintiffs had expressly disputed Defendant's lapse position, requested preservation and production of the policy and claim file, and advised Defendant that its refusal to pay benefits was contested.

37. Plaintiffs reasonably relied on Defendant's representations that the claim was under review and that benefits might be payable by continuing to submit documentation and by delaying other remedies while awaiting a proper determination.

38. As a result of Defendant's conduct, Plaintiffs have suffered financial loss, loss of use of funds, prolonged uncertainty, emotional distress associated with the denial of their father's benefits, and have incurred time and expense attempting to obtain records and compliance from Defendant.

## V. CLAIMS FOR RELIEF

### COUNT I – BREACH OF CONTRACT

39. Plaintiffs incorporate by reference Paragraphs 1 through 38 as if fully restated.

40. Defendant issued the Certificate as a valid contract promising to pay a death benefit upon the Insured's death.

41. Plaintiffs are designated beneficiaries and entitled to enforce payment.

42. Defendant breached the contract by refusing to pay benefits due without producing records sufficient to substantiate a lawful basis for nonpayment.

43. Plaintiffs have suffered damages including the unpaid benefits and consequential losses.

6

## COUNT II – INSURANCE BAD FAITH

44.  Plaintiffs incorporate by reference Paragraphs 1 through 38 as if fully restated.

45.  Defendant owed Plaintiffs a duty of good faith in investigating, evaluating, and paying the claim.

46.  Defendant failed to conduct a reasonable investigation and failed to issue a timely written determination explaining the factual and contractual basis for nonpayment.

47.  Defendant provided contradictory explanations regarding the Certificate's status and relied on incomplete internal data while acknowledging the absence of key records.

48.  Plaintiffs suffered damages including emotional distress and economic loss, and Defendant's conduct supports punitive damages where permitted by law.

## COUNT III – SPOLIATION OF EVIDENCE

49.  Plaintiffs incorporate by reference Paragraphs 1 through 38 as if fully restated.

50.  Once Plaintiffs asserted a claim and expressly disputed Defendant's lapse position, litigation was reasonably foreseeable to Defendant.

51.  Defendant had a duty to preserve relevant evidence, including policy-administration and termination records.

52.  Defendant has acknowledged that such records are unavailable.

53.  Upon information and belief, Defendant's destruction or failure to preserve these records occurred after litigation was reasonably foreseeable and deprived Plaintiffs of evidence necessary to prove their claims.

54.  Plaintiffs have been prejudiced and damaged by this loss of evidence.

55.  Defendant's failure to preserve these records has materially impaired Plaintiffs' ability to present a complete evidentiary case and to independently verify Defendant's asserted lapse.

7

**COUNT IV – VIOLATION OF R.C. 3911.071 (NOTICE PRIOR TO LAPSE)**

56. Plaintiffs incorporate by reference Paragraphs 1 through 38 as if fully restated.

57. Ohio law requires advance written notice before termination of certain life insurance policies for nonpayment.

58. Defendant has not produced any such notice or proof of mailing.

59. Absent proof of compliance with statutory notice requirements, any asserted termination is ineffective.

**COUNT V – UNFAIR CLAIMS HANDLING (O.A.C. 3901-1-54) – SUPPORTING BAD FAITH AND EQUITABLE RELIEF**

60. Plaintiffs incorporate by reference Paragraphs 1 through 38 as if fully restated.

61. Ohio Administrative Code 3901-1-54 sets standards for prompt and fair claims handling.

62. Defendant failed to comply with these standards by failing to provide timely, adequate written explanations and by failing to reasonably investigate the claim.

63. This count is pleaded to illustrate Defendant's lack of good faith and to support Plaintiffs' request for equitable and declaratory relief; Plaintiffs do not seek separate statutory damages under the rule.

**COUNT VI – DECLARATORY JUDGMENT**

64. Plaintiffs incorporate by reference Paragraphs 1 through 38 as if fully restated.

65. An actual controversy exists regarding whether the Certificate remained in force at the time of the Insured's death.

66. Plaintiffs seek a declaration that the Certificate was in effect and that Defendant is obligated to pay the death benefit.

**COUNT VII – EQUITABLE ESTOPPEL (ALTERNATIVE)**

8

67. Plaintiffs incorporate by reference Paragraphs 1 through 38 as if fully restated. 68.

Defendant made inconsistent representations regarding the Certificate's status.

69. Plaintiffs reasonably relied on those representations to their detriment.

70. Plaintiffs seek application of equitable estoppel based on Defendant's prior representations

regarding the Certificate's status.

## COUNT VIII – UNJUST ENRICHMENT (ALTERNATIVE)

71. Plaintiffs incorporate by reference Paragraphs 1 through 38 as if fully restated.

72. Defendant accepted premiums and benefitted financially from the Certificate.

73. Defendant's retention of those benefits while refusing to pay the death benefit is unjust.

74. Plaintiffs are entitled to restitution or equitable relief.

## COUNT IX – FRAUDULENT MISREPRESENTATION

75. Plaintiffs incorporate by reference Paragraphs 1 through 38 as if fully restated. 76. On or

about May 28, 2025, during a telephone conversation initiated by Plaintiffs regarding the status

of their claim, a claims representative acting on behalf of Defendant represented that the

Certificate was active and under review for payment.

77. At the time this representation was made, Defendant's internal administrative information

reflected a contrary position, including that Defendant was asserting the Certificate had lapsed or

terminated.

78. In June 2025, Defendant's representatives further stated that the policy file could not be

located and that benefits might still be payable, while Defendant simultaneously relied on

incomplete internal system data to refuse payment of the claim.

79. These representations were false or misleading statements of material fact concerning the

status of the Certificate and the handling of Plaintiffs' claim, and were made in the course of

Defendant's claim administration.

9

80. Defendant made these representations with knowledge of their falsity or with reckless disregard for their truth, and with the intent that Plaintiffs rely upon them by continuing to submit documentation and delaying pursuit of other remedies.

81. Plaintiffs reasonably relied on Defendant's representations by continuing to cooperate with the claim process, submitting additional documentation, and refraining from immediately pursuing legal remedies.

82. As a direct and proximate result of Defendant's misrepresentations, Plaintiffs suffered damages, including delay in payment of benefits, loss of use of funds, emotional distress, and additional time and expense incurred attempting to obtain compliance and records from Defendant.

**COUNT X – CONVERSION (ALTERNATIVE)**

83. Plaintiffs incorporate by reference Paragraphs 1 through 38 as if fully restated.

84. Upon the Insured's death, a specific and identifiable sum became due and payable under the Certificate for the benefit of identified beneficiaries.

85. After Plaintiffs made demand for payment, Defendant exercised wrongful dominion and control over those identifiable proceeds by refusing to remit payment while retaining exclusive control over the funds.

86. Plaintiffs have suffered damages as a result.

**V. PRAYER FOR RELIEF**

Plaintiffs demand a trial by jury on all issues so triable.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and grant the following relief:

a. Payment of the death benefit due under the Certificate, in an amount to be proven at trial;

10

b. Pre-judgment and post-judgment interest, including interest accruing from the Insured's date of death;

c. Compensatory damages including consequential damages, out-of-pocket losses, and emotional distress damages where available;

d. Punitive damages where permitted by Ohio law;

e. Declaratory and equitable relief as requested herein;

f. Reasonable attorney's fees where recoverable under Ohio law for insurer bad faith;

g. An adverse inference and/or other appropriate evidentiary relief relating to Defendant's failure to preserve material records;

h. Costs of this action and such other relief as the Court deems just and proper.

Respectfully submitted,


Pamela Lee, Plaintiff (Pro Se)
9506 Shawnee Trail
Powell, Ohio 43065
Phone: (614) 570-5829
Email: pam101lee@yahoo.com
Date: 2/5/2026


Mark Lee, Plaintiff (Pro Se)
2755 Lexington Avenue, Apt. E58
Lexington, Ohio 44904
Phone: (567) 274-3014
Email: mark1027@yahoo.com
Date: 2/5/2026